The Honorable Preston Scroggin State Representative 59 Marshall Road South Vilonia, AR 72173-9335
Dear Representative Scroggin:
I am writing in response to your request for my opinion on the following question:
 Does a non-profit child care facility have to have a privilege license ot [or] tax in the town in which they operate?
RESPONSE
In my opinion, a town has the authority to impose a privilege or occupational tax on a nonprofit child-care facility. To determine whether the tax applies, one must refer to the town's ordinances.
At issue is the application of A.C.A. § 26-77-102, which provides in pertinent part:
 (a) Any city council, board of commissioners, or board of aldermen of any municipal corporation in this state shall have the power to enact, by a two-thirds (2/3) vote of all members elected thereto, ordinances requiring any person, firm, individual, or corporation who shall engage in, carry on, or follow any trade, business, profession, vocation, or calling, within the corporate limits of the city or town, to pay a license fee or tax, except such persons, firms, individuals, or corporations who pay a tax to the city, town, or state on gross incomes or premium incomes and except their agents.
* * *
 (c) The license charged and collected shall be for the privilege of doing business or carrying on any trade, profession, vocation, or calling in the city where the trade, business, profession, vocation, or calling is situated, to take out and procure a license therefor and pay into the city or town treasury before receiving it such a sum or amount of money as may be specified by the ordinance for the license and privilege.
 (d) The council or boards shall have the right to classify and define any trade, business, profession, vocation, or calling and to fix the sum or amount any person, firm, individual, or corporation shall pay for the license required for the privilege of engaging in, carrying on, or following any trade, business, vocation, or calling, based on the amount of goods, wares, or merchandise carried in stock in any business, or the character and kind of trade, business, profession, vocation, or calling. However, no classification shall be based upon earnings or income.
On its face, this statute authorizes any local unit of government to tax whatever businesses it chooses to designate for the privilege of operating within its jurisdiction, subject to the condition that the amount of the tax cannot "be based upon earnings or income." In Holt v.City Of Maumelle, 302 Ark. 51, 55, 786 S.W.2d 581 (1990), the Arkansas Supreme Court pronounced:
 It is well-established that a strong presumption of validity attaches to legislation enacted by the General Assembly; this principle holds for tax statutes as well as any other variety of legislation. See Dicks v. Naff, 255 Ark. 357, 500 S.W.2d 350 (1973). In City of Mountain Home v. Drake, 281 Ark. 336, 663 S.W.2d 738 (1984), where an ordinance which imposed an occupation tax was upheld, this court quoted with approval language from Madden v. Kentucky, 309 U.S. 83 (1940):
 [T]he presumption of constitutionality can be overcome only by the most explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes. . . . [T]he burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it.
In Drake, the court described and approved the occupation tax in the following terms:
 [T]he authority to impose an occupation licensing fee is expressly delegated to the city by the legislature under Ark. Stat. Ann. 19-4601, which gives cities the right to classify and define any trade, business profession, or calling and to fix the amount any person, firm, or corporation shall pay for the privilege of doing business based on the amount of goods carried in stock, or the kind of vocation, but prohibits classification based on earnings or income.
281 Ark. at 338.
Implicit in your request is a suggestion that a nonprofit child-care facility might fall outside the scope of this statute because its activities are not purely commercial. I cannot agree with this interpretation. In my opinion, operating such a facility clearly qualifies as a "vocation" or "calling," thus rendering the facility subject to taxation if the municipal corporation elects to impose a tax. This is not to say that nonprofit and eleemosynary corporations will necessarily be subject to a privilege or occupation tax. It is indisputable that a city, should it elect to do so, may by ordinance relieve such otherwise taxable entities from their occupation tax liabilities. Indeed, the Arkansas Supreme Court was confronted with precisely this situation in Bates v. City of Little Rock, 229 Ark. 819,319 S.W.2d 37 (1958), which involved a challenge to a requirement that the NAACP disclose its membership list as a condition to qualifying for a charitable exemption to the occupation or privilege tax. The court prefaced its analysis with the following:
 In Arkansas, municipalities are creatures of the State and have the powers which the State gives them. (Eagle v. Beard, 33 Ark. 497; City of Hot Springs v. Gray, 215 Ark. 243, 219 S.W.2d 930.) By Act No. 294 of 1937 (now found in 19-4601 et seq. Ark. Stats.) the Arkansas Legislature authorized municipalities to enact ordinances levying an occupation tax. This was a revenue measure. In Talley v. Blytheville, 204 Ark. 745, 164 S.W.2d 900, we held that this act of 1937 was authority for cities to enact occupation tax ordinances as revenue producing measures. Our subsequent cases have followed that holding. In 1947 the City of Little Rock passed its ordinance No. 7444, captioned," An Ordinance Establishing an Annual Privilege License Tax for Various Businesses, Occupations, and Professions within the City of Little Rock Providing for the Amount Thereof . . ." This ordinance has been amended numerous times by changing the amount to be charged various businesses and professions and adding other businesses and professions as subjects of taxation.
 On November 22, 1948 the City of Little Rock passed its Ordinance No. 7809, entitled, "An Ordinance Relieving Charitable Institutions from the payment of Privilege Taxes to the City of Little Rock, Amending Ordinance No. 7444, and For Other Purposes". Thus, by the Ordinance No. 7809, certain charitable or non-profit organizations became exempt from the privilege tax, even though such organization engaged in some kind of business.
Id. at 826-27 (footnote omitted). The court concluded that the City of Little Rock could require charitable institutions, including the NAACP, to submit their membership lists as well as other documentation to establish their eligibility for the charitable exemption. Id. at 829.
Bates was reversed on appeal based on the United States Supreme Court's conclusion that the disclosure requirement violated the potentially beleaguered NAACP members' associational rights under the First Amendment. Bates v. Little Rock, 361 U.S. 516 (1960). However, in the course of its analysis, the Court acknowledged the permissibility both of imposing occupational license taxes and of exempting charitable organizations. Id. at 525-27.
The Bates cases confirm what is stated directly in A.C.A. § 26-77-102 — namely, that each city or town has the discretion to determine what occupations, if any, it will tax. The cases further acknowledge that nonprofit enterprises, absent an enforceable exemption, are potentially subject to taxation. Accordingly, the only way to determine whether a particular nonprofit child-care facility is subject to an occupational license tax is by referring to the local ordinances. In my opinion, a city or town is free to impose such a tax if it chooses.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP/JHD:cyh